UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARTIN HUGHES, *Plaintiff*, v. THE DISTRICT OF COLUMBIA, *Defendant*. | Civil Action No. 25-2270 (SLS) Judge Sparkle L. Sooknanan |

**MEMORANDUM OPINION**

Between 2018 and 2022, Martin Hughes had three interactions with law enforcement in the District of Columbia that he alleges caused him considerable harm. He was arrested twice without being convicted of a crime, and he was subject to searches and seizures that he believes were unlawful. As a result, Mr. Hughes lost his job, faced eviction from his home, was unable to pay child support, and experienced severe emotional distress. He filed this lawsuit under the Constitution and District of Columbia law seeking to hold the District of Columbia responsible for the conduct of its law enforcement officers and for the harm that conduct caused him. The District now moves to dismiss this case, arguing that Mr. Hughes has failed to state a plausible claim for relief. The Court recognizes that Mr. Hughes has been harmed in significant ways and is sympathetic to the lasting impact these harms have had on all aspects of his life. But the Court cannot grant him the relief that he seeks. Because Mr. Hughes has not brought viable claims, the Court grants the District's motion and dismisses the case.

## BACKGROUND

### A. Factual Background

The Court draws the facts, accepted as true, from the Plaintiff's Amended Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). Because Mr. Hughes is proceeding pro se, the Court considers the Amended Complaint "in light of all filings, including filings responsive to [the] motion to dismiss."[1] *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam) (cleaned up).

Mr. Hughes alleges three separate interactions with law enforcement in the District of Columbia in 2018, 2021, and 2022. Am. Compl. ¶¶ 1–6, ECF No. 14. In 2018, Mr. Hughes was arrested but never convicted of a crime. Am. Compl. ¶¶ 1, 3; *see also* Hughes Decl., Ex. A. This arrest "led to [Mr. Hughes'] termination from [the U.S. Postal Service], resulting in a period of unemployment and forced relocation." Am. Compl. ¶ 3. In 2021, Mr. Hughes was again arrested but "no charges were filed" against him. Am. Compl. ¶ 4; *see also* Hughes Decl., Ex. B. That arrest "involved an unlawful search and seizure, where [Mr. Hughes]' firearm was taken and never returned." Am. Compl. ¶ 4. And in 2022, Mr. Hughes' vehicle was "unlawful[ly] search[ed] by MPD officers without a warrant." Am. Compl. ¶ 5. Mr. Hughes "recorded the incident and was issued a CN number but was not charged." *Id.*; *see also* Hughes Decl., Ex. C.

---

[1] In opposing dismissal, Mr. Hughes attached a Declaration, ECF No. 17-1, and various accompanying exhibits, including records documenting his arrests and vehicle search, Exs. A, B, C, ECF No. 17-2 at 1–3; proofs of service and mailings to the District, Exs. F, G, K, ECF No. 17-2 at 4–5, 14–18; records related to his alleged eviction, employment loss, and child support obligations, Exs. H, I, J, ECF No. 17-2 at 6–13; and a "Personal Impact Statement," Ex. L, ECF No. 17-2 at 18. Mr. Hughes' Complaint and Declaration also refer to video evidence documenting the incidents at issue that he claims he submitted to the Court. Am. Compl. ¶ 6; Hughes Decl., ECF No. 17-1. Because the Court never received the referenced video evidence, it invited Mr. Hughes to submit it, and on January 7, 2026, he submitted footage of the 2022 and 2023 incidents. ECF No. 20.

Mr. Hughes alleges that the misconduct of "MPD officers" involved in all three incidents, and the District's failure to "prevent or rectify" that misconduct, caused him "severe personal, financial, and professional harm." Am. Compl. ¶¶ 2, 8, 12–13. He "lost his job" with the Postal Service, "faced eviction, incurred child support arrears, and experienced emotional distress." *Id.*

### B. Procedural Background

Mr. Hughes initially filed this lawsuit in D.C. Superior Court on October 22, 2024. ECF No. 1-2. The case was removed to this Court on July 16, 2025. ECF No. 1. On September 5, 2025, Mr. Hughes filed an Amended Complaint bringing claims against the District (1) under 42 U.S.C. § 1983 for violating his Fourth and Fourteenth Amendment rights under the United States Constitution (Count I), and (2) for common law negligence arising from the District's failure "to prevent or rectify the misconduct of its officers" (Count II). Am. Compl. ¶¶ 7–13. On September 18, 2025, the District moved to dismiss the Amended Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim, and for partial summary judgment on Count II under Federal Rule of Civil Procedure 56. ECF No. 15. That motion is fully briefed and ripe for review. Pl.'s Opp'n, ECF No. 17; Def.'s Reply, ECF No. 18.

## LEGAL STANDARD

Under Rule 12(b)(6), a court must dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quotation omitted). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an "inference[] . . . unsupported by the facts set out in the complaint.'" *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (citations omitted).

A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). "This benefit is not, however, a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009) (citation omitted). "Although a pro se complaint must be construed liberally, the complaint must still present a claim on which the Court can grant relief to withstand a Rule 12(b)(6) challenge." *Smith v. Scalia*, 44 F. Supp. 3d 28, 36 (D.D.C. 2014) (cleaned up).

## DISCUSSION

In support of dismissal, the District contends (1) that Mr. Hughes has failed to state viable claims for constitutional violations or common law negligence; (2) that a significant portion of his claims are time-barred; and (3) that he failed to provide timely notice of his injuries to the District. Although these arguments are all compelling, the Court need look no further than the first. Because Mr. Hughes has not stated a viable claim, the Court must dismiss this case under Rule 12(b)(6).

### A.     42 U.S.C. § 1983 (Count I)

Section 1983 of Title 42 "allows an individual, under specific circumstances, to sue a municipality for policies or practices that result in constitutional violations." *Hernandez v. District of Columbia*, No. 21-cv-1374, 2023 WL 2525004, at *3 (D.D.C. Mar. 15, 2023) (citing *Monell v. N.Y.C. Dept. of Soc. Serv.*, 436 U.S. 658, 694 (1978)); *see also* 42 U.S.C. § 1983. To state such a claim, a plaintiff must properly allege: (1) "a predicate constitutional violation"; and (2) "that a custom or policy of the municipality caused the violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). Mr. Hughes has not met this burden.

#### 1.     Predicate Constitutional Violation

Mr. Hughes asserts in conclusory fashion that District officers violated his Fourth and Fourteenth Amendment rights. But his allegations do not support this claim.

To begin, the District may not be held liable under the Fourteenth Amendment because it is not a state. *See Bolling v. Sharpe*, 347 U.S. 497, 498–99 (1954); *see also Alston v. District of Columbia*, 772 F. Supp. 3d 43, 63 n.9 (D.D.C. 2025) ("[T]he Fourteenth Amendment applies to states—not to the District or its employees."). The District is, however, subject to the Fifth Amendment, so the Court will construe Mr. Hughes' Fourteenth Amendment claim as one under the Fifth Amendment. *See Hernandez*, 2023 WL 2525004, at *4.

The crux of Mr. Hughes' constitutional claim is that he was subject to "unlawful searches and seizures, detention, and excessive force." Am. Compl. ¶ 8. Both the Fourth and Fifth Amendments protect against the general sort of conduct at issue in this case. The Fourth Amendment safeguards the "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. And the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

As relevant here, "[t]he Fifth Amendment's guarantee of due process is 'intended to prevent government officials from abusing their power or employing it as an instrument of oppression.'" *Alston*, 772 F. Supp. 3d at 63–64 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)). But "[o]nly conduct that 'shocks the conscience' gives rise to a substantive due process claim." *Id.* (quoting *Lewis*, 523 U.S. at 846). And where another Amendment, like the Fourth Amendment, provides "an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Lewis*, 523 U.S. at 842 (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[A]*ll* claims that law enforcement officers have used excessive

5

force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." (emphasis in original)). Thus, Mr. Hughes' constitutional claim must be analyzed under the Fourth Amendment.

An arrest or seizure is constitutionally unreasonable under the Fourth Amendment "when there is no probable cause to believe that a crime has been or is being committed (i.e., false arrest) or when the force used to seize a person is more severe than reasonably necessary (i.e., excessive force)." *Alston*, 772 F. Supp. 3d 43, 56–57 (citing *Graham*, 490 U.S. at 396). While there are various ways searches can be constitutionally unreasonable, they are generally permissible when conducted as part of a lawful arrest. *Maryland v. King*, 569 U.S. 435, 449 (2013) ("The fact of a lawful arrest, standing alone, authorizes search." (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979)). Similarly, a "warrantless search of [an] entire vehicle" may be valid where an officer has "permission or probable cause to believe that [the vehicle] contain[s] evidence of criminal activity." *United States v. Freeman*, 360 F. Supp. 2d 43, 46 (D.D.C. 2003).

Here, Mr. Hughes' allegations reveal little to nothing about why he believes the seizures and searches were unreasonable. He alleges that his arrests did not result in convictions. Am. Compl. ¶ 1. But the probable cause "standard that governs arrest does not require proof enough to convict." *Von Sleichter v. United States*, 472 F.2d 1244, 1249 (D.C. Cir. 1972). So the fact that Mr. Hughes "was never convicted of any crime," Am. Compl. ¶ 1, does not on its own mean that his arrests were unlawful. This is not to say that his arrests were lawful. The Court takes seriously Mr. Hughes' claim that he was severely harmed by arrests that ultimately led to no charges or convictions. But the Amended Complaint provides the Court with no allegations to support a claim that the arrests violated the Fourth Amendment.

Similarly, Mr. Hughes' allegation that his vehicle was searched "without a warrant," Am. Compl. ¶ 5, is not enough to support his claim that the search was unconstitutional. Accepting this fact as true, the officers still could reasonably have had "probable cause to believe that [Mr. Hughes'] vehicle contained evidence of criminal activity." *See Freeman*, 360 F. Supp. 2d at 46. And Mr. Hughes makes no specific allegations about the "excessive force" he claims officers used against him during the relevant incidents. Am. Compl. ¶ 8.

The video footage Mr. Hughes submitted does not change the Court's analysis as it does not depict any conduct that is unconstitutional on its face. The 2021 video appears to show Mr. Hughes being arrested and searched. But it reveals nothing about whether the officers had probable cause for their actions, nor does it show the officers using excessive force. The 2022 footage shows Mr. Hughes' vehicle being searched by officers, but it too reveals nothing about whether the officers had a legal basis for the search.

At bottom, Mr. Hughes' allegations of constitutional violations are "legal conclusions" that are not supported by "the facts set out in the complaint" or by inferences that can reasonably be drawn from those facts. *See Trudeau*, 456 F.3d at 193 (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). Again, the Court does not conclude that the seizures and search at issue were lawful. But to survive dismissal of this claim, it is Mr. Hughes' burden to adequately allege a constitutional violation. He has not done so.

### 2. Municipal Custom or Policy

Even assuming the existence of predicate constitutional violations, Mr. Hughes has not adequately alleged that a District "custom or policy" caused those violations. *Baker*, 326 F.3d at 1306. Generally, a plaintiff may satisfy this standard by alleging that "(1) the municipality adopt[ed] a policy that itself violat[ed] the Constitution; (2) the unconstitutional action was taken

7

by a 'policy maker' within the government; (3) the employees' unconstitutional actions are so consistent that they have become a 'custom' of the municipality of which the supervising policymaker must have been aware; or (4) the municipality knew or should have known of a risk of constitutional violations, but showed 'deliberate indifference' to that risk by failing to act." *Hurd v. District of Columbia*, 997 F.3d 332, 337 (D.C. Cir. 2021) (cleaned up).

Mr. Hughes' does not plausibly allege any of these theories. He includes no specific allegations about the District adopting an unconstitutional policy or about a District policy maker taking an unconstitutional action. And his allegations regarding the officers he interacted with are so minimal that the Court can deduce little about what exactly they did in each incident that was unconstitutional. The Court certainly cannot infer that their behavior was "so consistent" as to constitute a "custom." Nor is it apparent from Mr. Hughes' allegations how the District "knew or should have known" that the officers were engaged in unconstitutional behavior.

Because Mr. Hughes has failed to sufficiently plead either of the elements for a municipal liability claim under Section 1983, Count I must be dismissed.

### B. Negligence and Failure to Prevent Harm (Count II)

Mr. Hughes' common law claim for "Negligence and Failure to Prevent Harm" fails for much the same reasons.

Mr. Hughes' negligence claim appears to be premised on the District's failure to adequately supervise its officers. *See* Am. Compl. ¶ 12 (alleging that the District breached its duty of care to Mr. Hughes "by failing to prevent or rectify the misconduct of its officers"). "To succeed on a claim of negligent supervision, [a] plaintiff must prove 'that the employer breached a duty to the plaintiff to use reasonable care in the supervision or retention of an employee which

8

proximately caused harm to plaintiff.'" *James v. District of Columbia*, 869 F. Supp. 2d 119, 121 (D.D.C. 2012) (quoting *Phelan v. City of Mount Rainier,* 805 A.2d 930, 940 (D.C. 2002))

Here, for the reasons already discussed, Mr. Hughes has failed to state a plausible claim. He alleges little to nothing about the officers' conduct. And he alleges even less about the District's supervision of those officers. The Amended Complaint says nothing, for example, about the officers' training or lack thereof, whether there were supervisors on the scene or whom the officers were reporting to who were aware of their alleged misconduct, and whether those supervisors took any steps to correct or prevent that misconduct. Without such allegations, the Court has no basis to infer that the District breached a duty to Mr. Hughes to reasonably supervise its employees. Accordingly, Count II must also be dismissed.

## CONCLUSION

For all these reasons, the Court grants the District's Motion to Dismiss, ECF No. 15, and dismisses Mr. Hughes' Complaint.[2]

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   February 9, 2026

---

[2] Because the Court dismisses Mr. Hughes' Complaint in its entirety, it need not address the District's parallel Motion for Partial Summary Judgment.